STATE ex rel. WARDEN, Respondent, vs. WATERBURY, Appellant.

February 24 — March 17, 1891.

*Town meetings: Place of holding.*

Although sec. 783, R. S., in the chapter relating to towns, provides a way of changing the place of holding town meetings by ballot of the electors, yet a new and substantial way of making such change is provided by ch. 416, Laws of 1885, amending sec. 27, R. S., which is expressly made applicable to town as well as other elections. Whenever, under that statute, a town is divided into several election districts, the polling place in the district designated as the "First Precinct," becomes the place for thereafter holding the town meetings in such town, and the officers there elected are entitled to their offices.

APPEAL from the Circuit Court for *Douglas* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action of *quo warranto* to try the title to the office of supervisor of the town of Nebagamain, in the county of Douglas. The facts relating to the election are stipulated, and to the effect that, in the ordinance creating the town of Nebagamain, the time for holding the first annual town meeting was fixed on April 1, 1887, at the school-house in Hawthorne, and the same was held at that time and place; that the annual town meeting was held at the same place in April, 1888, and at each of said meetings the regular business of the town was transacted, and a full corps of town officers elected; that October 2, 1888, the town board of supervisors made an order dividing the town into two election districts therein, at the general election to be held November 6, 1888, to be known as "Election District No. 1" and "Election District No. 2" of said town, designating particularly the territory comprised in each

district, and providing that the poll of said district No. 1 be held at Sauntry's Sleeping Camp, at White Birch, with certain persons named as inspectors; that the poll in said district No. 2 should be held in the school-house at Hawthorne, with inspectors therein named; that a copy of said order was posted and filed as required by law; that Hawthorne and White Birch are, respectively, small stations within said town, on the line of the railway, and about ten miles apart; that the place of holding the annual town meetings and election of town officers in said town was never changed, as prescribed by sec. 783, R. S., unless such change was by virtue of said order, or by the fact that the annual town meeting was actually held at White Birch, as herein stated; that the general election of November, 1888, was held at the two places, respectively, specified in said order; that on the first Tuesday of April, 1889, a town meeting was held at said Sauntry's Sleeping Camp, at which 223 votes were cast, and the usual business of the town transacted, and a full corps of town officers elected, each receiving over 200 votes; that on the same day a town meeting and town election was held in said school-house at Hawthorne, at which the usual business was transacted and the usual officers elected, and at which seventy-two votes were cast, but that none of the officers so purporting to be elected qualified, except the assessor; that on the first Tuesday in April, 1890, certain of the electors of said town met at the school-house at Hawthorne, and, after providing themselves with clerks and inspectors of election, transacted the usual business of the town, and held an election for town officers, at which the relator received sixty-seven votes for the office of town supervisor, and the defendant five votes for the same office, the result of which was certified and filed as required, but that the relator never in fact acted as such; that none of the outgoing town officers were present at said meeting, and no order of the town board of

audit was made; that the result of said election was returned to the town clerk elected at White Birch in 1889; that the relator took and filed the usual oath of office, April 8, 1890, and performed all the acts required to qualify as such supervisor; that on the first Tuesday of April, 1890, a town meeting was held at Sauntry's Sleeping Camp, at White Birch, at which the chairman of the town board presided, and the said town clerk was present and acted, and at which meeting all the usual business of said town was transacted, and that town officers were elected, and that at such election the relator received twenty-one votes for the office of supervisor, and the defendant 262 for the same office; that the result was canvassed, returned, and filed as prescribed by law; that within the time prescribed by law the defendant subscribed and filed the usual oath of office, and qualified as such supervisor.

Upon such facts the court found, as conclusions of law, that the relator was entitled to said office of supervisor instead of the defendant. From the judgment entered thereon accordingly, the defendant brings this appeal.

For the appellant there was a brief by *S. J. Bradford*, and *Clapp & Macartney*, and oral argument by *N. H. Clapp*. To the point that the "First Precinct," where the town meeting was held, was the place designated by law, but, if not, the irregularity not having been brought about by any fraud or unlawful practices, does not vitiate the appellant's election, they cited *Dale v. Irwin*, 78 Ill. 180; *Minor v. Kidder*, 43 Cal. 237; *Sprague v. Norway*, 31 id. 173; *Stemper v. Higgins*, 38 Minn. 222; *Farrington v. Turner*, 53 Mich. 29; *Steele v. Calhoun*, 61 Miss. 563; *People v. Cooke*, 8 N. Y. 67.

For the respondent the case was submitted on the brief of *D. E. Roberts*, who took the ground that the place of holding the town meeting was never legally changed.

CASSODAY, J.  By the Revised Statutes the town board were expressly authorized, whenever they deemed it more convenient for the electors at any general or special election, by their order in writing, to divide such town into two or more election districts, specifying the boundaries of such districts, and the place or places where the polls should be held therein, etc.  Sec. 27, R. S.  By ch. 107, Laws of 1881, such division was made mandatory upon the supervisors of the town, in all cases where the number of votes therein specified had been cast.  The next year, ch. 107, Laws of 1881, was repealed, and sec. 27, R. S., revived and re-enacted.  Sec. 27, R. S., was subsequently "amended by adding at the end thereof the following: The town board shall be required to make such divisions, upon the petition in writing of fifty or more electors of any town.  This act shall apply to *all elections,* whether general, special, or *town elections:* provided, *that all town meetings be held at the polling place to be known as the ' First Precinct.'* "  Ch. 416, Laws of 1885.  The order dividing the town into two election districts, with a polling place for each district, designated therein as district "No. 1 " and district "No. 2," respectively, as mentioned in the foregoing statement, was by its terms limited to the general election of November 6, 1888.  But such division, under the language of the act of 1885, quoted, fixed the place for holding subsequent town meetings at the polling place known as the "First Precinct."  True, sec. 27, R. S., is in the chapter on "Electors and General Elections," and under the title "Elections Other than for Town Officers," but, as indicated, the amendment of 1885, by express words, was made applicable ·to all elections, and, in case of any such division, expressly provided where the town meetings should subsequently be held; that is to say, in the case at bar, at Sauntry's Sleeping Camp, at White Birch.  True, the annual town meeting was held in the school-house at Hawthorne, in April, 1888; and the

place for holding such annual town meeting was never changed by ballot, as prescribed by sec. 783, R. S. But, as indicated, the act of 1885 prescribed a new and substantive way of making such change whenever a town should be divided into two or more election districts, as in the case at bar. Sauntry's Sleeping Camp, at White Birch, was the polling place at the election of November 6, 1888, known as the "First Precinct;" and hence by the express words of the act of 1885 it became fixed as the place for holding subsequent town meetings. It follows that the votes cast for the defendant for supervisor at Sauntry's Sleeping Camp, in April, 1890, were properly canvassed, and improperly rejected by the court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the defendant.

